## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN RYAN,<br><br>                    Plaintiff,<br><br>        v.<br><br>MAXAR TECHNOLOGIES INC., DANIEL<br>L. JABLONSKY, HOWELL M. ESTES, III,<br>NICK S. CYPRUS, ROXANNE J. DECYK,<br>JOANNE O. ISHAM, C. ROBERT KEHLER,<br>GILMAN LOUIE, L. ROGER MASON, JR.,<br>HEATHER A. WILSON, ERIC J. ZAHLER,<br>and EDDY ZERVIGON,<br><br>                    Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS<br>OF THE SECURITIES EXCHANGE<br>ACT OF 1934**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff John Ryan ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this action against Maxar Technologies Inc. ("Maxar" or the "Company") and Maxar's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to sell the Company to Advent International Corporation through its affiliates Galileo Parent, Inc., Galileo Bidco, Inc., and Galileo Topco, Inc. (collectively "Advent").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on March 16, 2023. The Proxy recommends that Maxar stockholders vote in favor of a proposed transaction (the "Proposed

Transaction") whereby Maxar is acquired by Advent. The Proposed Transaction was first disclosed on December 16, 2023, when Maxar and Advent announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Advent will acquire all of the outstanding shares of common stock of Maxar for $53.00 per share (the "Merger Consideration"). The deal is valued at approximately $6.4 billion and is expected to close mid-2023.

3.      The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Maxar management, the financial analyses conducted by J.P. Morgan Securities LLC ("J.P. Morgan"), Maxar's financial advisor, as well as potential conflicts of interest faced by J.P. Morgan and Maxar insiders.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the Proxy with the SEC or otherwise causing an amendment to the Proxy to be disseminated to Maxar's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Maxar's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Maxar.

6.      Defendant Maxar is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 1300 West 120th Avenue,

Westminster, Colorado 80234. Maxar common stock trades on the New York Stock Exchange under the ticker symbol "MAXR."

7.     Defendant Daniel L. Jablonsky has been the President, Chief Executive Officer and a director of the Company since 2019.

8.     Defendant Howell M. Estes, III has been a director of the Company since 2017. Defendant Estes serves as Chair of the Board.

9.     Defendant Nick S. Cyprus has been a director of the Company since 2017.

10.    Defendant Roxanne J. Decyk has been a director of the Company since 2019.

11.    Defendant Joanne O. Isham has been a director of the Company since 2016.

12.    Defendant C. Robert Kehler has been a director of the Company since 2016.

13.    Defendant Gilman Louie has been a director of the Company since 2020.

14.    Defendant L. Roger Mason Jr. has been a director of the Company since 2017.

15.    Defendant Heather A. Wilson has been a director of the Company since 2021.

16.    Defendant Eric J. Zahler has been a director of the Company since 2014.

17.    Defendant Eddy Zervigonhas been a director of the Company since 2019.

18.    Nonparty Advent International Corporation is a global private equity firm focused on partnering with management teams in five core sectors, including business and financial services; health care; industrial; retail, consumer and leisure; and technology (including investments in defense, security and cybersecurity as well as critical national infrastructure).

19.    Nonparties Galileo Parent, Inc., Galileo Bidco, Inc., and Galileo Topco, Inc. are each affiliated with Advent International Corporation and were formed solely for the purposes of the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

23.     Maxar is a provider of space solutions and geospatial intelligence. Maxar delivers to government and commercial customers to help them monitor, understand and navigate our changing planet; deliver global broadband communications; and explore and advance the use of space. Maxar's approach combines decades of deep mission understanding and a commercial and defense foundation to deploy its solutions. Maxar has 4,400 team members in over 20 global locations.

24.     On December 15, 2022, the Company entered into the Merger Agreement with Advent.

25.     According to the press release issued on December 16, 2022 announcing the Proposed Transaction:

## MAXAR TECHNOLOGIES TO BE ACQUIRED BY ADVENT INTERNATIONAL FOR $6.4 BILLION

*Maxar stockholders to receive $53.00 per share in cash, a 129% premium to prior closing price*

*Maxar to remain U.S.-controlled and operated company following close*

*Advent brings 35+ year investment track record with significant experience in global security and defense*

*Transaction will support Maxar to accelerate investment in and development of the Company's next-generation satellite technologies and data insights for its customers*

**Westminster, CO and Boston, MA, December 16, 2022 –** Maxar Technologies (NYSE:MAXR) (TSX:MAXR) ("Maxar" or the "Company"), provider of comprehensive space solutions and secure, precise, geospatial intelligence, today announced that it has entered into a definitive merger agreement to be acquired by Advent International ("Advent"), one of the largest and most experienced global private equity investors, in an all-cash transaction that values Maxar at an enterprise value of approximately $6.4 billion. Advent is headquartered in the United States and has a demonstrable track record as a responsible owner of defense and security businesses. Following the close of the transaction, Maxar will remain a U.S.-controlled and operated company.

Under the terms of the definitive merger agreement, Advent has agreed to acquire all outstanding shares of Maxar common stock for $53.00 per share in cash. The purchase price represents a premium of approximately 129% over Maxar's closing stock price of $23.10 on December 15, 2022, the last full trading day prior to this announcement, an approximately 135% premium to the 60-day volume-weighted average price prior to this announcement, and a premium of approximately 34% over Maxar's 52-week high.

Following the closing of the transaction, Maxar will benefit from the significant resources, operational expertise and capacity for investment provided by Advent. As a private company, Maxar will be able to accelerate investments in next-generation satellite technologies and data insights that are vital to the Company's government and commercial customers, as well as pursue select, strategic M&A to further enhance the Company's portfolio of solutions. This includes supporting the successful delivery of the new Legion satellite constellation, accelerating the launch of Legion 7 and 8 satellites and further growing the Earth Intelligence and Space Infrastructure businesses through investments in next-generation capabilities, such as advanced machine learning and 3D mapping. With approximately $28 billion invested across the defense, security and cybersecurity sectors in the last three years, Advent's portfolio companies have substantial

expertise supporting many satellite and defense platforms which serve the U.S. government and its allies as well as companies across the globe.

"This transaction delivers immediate and certain value to our stockholders at a substantial premium," said General Howell M. Estes, III (USAF Retired), Chair of Maxar's Board of Directors. "Maxar's mission has never been more important, and this transaction allows us to maximize value for stockholders while accelerating the Company's ability to deliver its mission-critical technology and solutions to customers over the near and long term."

"Today's announcement is an exceptional outcome for stockholders and is a testament to the hard work and dedication of our team, the value Maxar has created and the reputation we have built in our industry," said Daniel Jablonsky, President and CEO of Maxar. "Advent has a proven record of strengthening its portfolio companies and a desire to support Maxar in advancing our long-term strategic objectives. As a private company, we will have enhanced flexibility and additional resources to build on Maxar's strong foundation, further scale operations and capture the significant opportunities in a rapidly expanding market."

"We have tremendous respect and admiration for Maxar, its industry-leading technology and the vital role it serves in supporting the national security of the United States and its allies around the world," said David Mussafer, Chairman and Managing Partner of Advent. "We will prioritize Maxar's commitment as a core provider to the U.S. defense and intelligence communities, and allies, while providing Maxar with the financial and operational support necessary to apply its technology and team members even more fully to the missions and programs of its government and commercial customers."

"In our view, Maxar is a uniquely positioned and attractive asset in satellite manufacturing and space-based high-resolution imagery, with an incredible workforce and many opportunities ahead," said Shonnel Malani, Managing Director and global head of Advent's aerospace and defense team. "We have strong conviction in the growing need for the differentiated solutions Maxar provides, and our goal is to invest in expanding Maxar's satellite constellation as well as supporting Maxar's team to push the boundaries of innovation, ensuring mission success for its customers."

**Transaction Details**

Under the terms of the agreement, which has been unanimously approved by Maxar's Board of Directors, Maxar stockholders will receive $53.00 in cash for each share of common stock they own.

Advent has arranged committed debt and equity financing commitments for the purpose of financing the transaction, providing a high level of closing certainty. Funds advised by Advent have committed an aggregate equity contribution of $3.1

billion and British Columbia Investment Management Corporation ("BCI") is providing a minority equity investment through a committed aggregate equity contribution equal to $1.0 billion, both on the terms and subject to the conditions set forth in the signed equity commitment letters.

The agreement includes a 60-day "go-shop" period expiring at 11:59 pm EST on February 14, 2023. During this period, the Maxar Board of Directors and its advisors will actively initiate, solicit and consider alternative acquisition proposals from third parties. The Maxar Board will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Maxar does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required. The Company, Advent and BCI will contemporaneously pursue regulatory reviews and approvals required to conclude the transaction.

The transaction is expected to close mid-2023, subject to customary closing conditions, including approval by Maxar stockholders and receipt of regulatory approvals. The transaction is not subject to any conditionality related to the launch, deployment or performance of Maxar's WorldView Legion satellite program. Upon completion of the transaction, Maxar's common stock will no longer be publicly listed. It is expected that Maxar will continue to operate under the same brand and maintain its current headquarters in Westminster, Colorado.

## B.   The Materially Incomplete and Misleading Proxy

26.     On March 16, 2023, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts*

27.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of J.P. Morgan's fairness opinion, J.P. Morgan reviewed "certain internal financial analyses and forecasts

prepared by Maxar's management relating to its business." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Maxar's management provided to the Board and J.P. Morgan.

28.      Notably, Defendants failed to disclose the line item entries forming the basis of the calculations of Adjusted EBITDA and Unlevered Free Cash Flow with respect to the "July 2022 Base Case Forecast," "October 2022 Satellite Loss Case Forecast," "October 2022 Base Case Forecast," "November 2022 Base Case Forecast," and "November 2022 Satellite Loss Case Forecast."

29.      This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning J.P. Morgan's Financial Analyses

30.      With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose: (a) Maxar's terminal values; (b) Maxar's net debt as of December 31, 2022; (c) Maxar's tax credits it anticipates applying through fiscal year 2027 and beyond as provided by Company management; and (d) Maxar's outstanding shares on a fully diluted basis.

31.      With respect to the *Selected Transactions Multiple Analysis* and *Public Trading Multiples Analysis*, the Proxy fails to disclose the individual financial multiples metrics for each of the selected companies and transactions respectively studied by J.P. Morgan.

32.      With respect to J.P. Morgan's analysis of the price targets set by published equity research analysts for Maxar common stock, the Proxy fails to disclose the individual price targets it analyzed and their sources.

### Materially Incomplete and Misleading Disclosures Concerning the Flawed Process

33.      The Proxy also fails to disclose material information concerning the sales process.

34.     For example, the Proxy fails to disclose information about confidentiality agreements entered into between the Company and parties to the sales process. The Proxy does not disclose the terms of the standstill provisions, whether the standstill provisions are still in effect or have been waived, and which of the parties cannot make a superior proposal for the Company. The disclosure of the terms of any standstill provisions is crucial to Plaintiff being fully informed of whether his fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

### *Material Misrepresentations and/or Omissions Concerning J.P.   Morgan's and Company Insiders' Potential Conflicts of Interest*

35.     The Proxy fails to disclose material information concerning potential conflicts of interest by J.P. Morgan, specifically whether J.P. Morgan provided any services British Columbia Investment Management Corporation or any of its affiliates (a minority investor in Galileo Topco, Inc.) in the two years prior to rendering its fairness opinion in connection with the Proposed Transaction, and if so, the description of the services performed, and the compensation J.P. Morgan received for such services.

36.     The Proxy also fails to disclose material information concerning Maxar insiders' potential conflicts of interest, including if any of Advent's proposals or indications of interest discussed the retention of Maxar's management in the surviving company following the Proposed Transaction or their purchase of or participation in the equity of the combined corporation.

37.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm,

warranting the injunctive relief sought herein.

38.    In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

39.    Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

40.    Further, the Proxy indicates that on December 15, 2022, J.P. Morgan reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Maxar stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning J.P. Morgan's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

41.    Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

42.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Defendants have filed the Proxy with the SEC with the intention of soliciting Maxar stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

44.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Maxar, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Maxar shares and the financial analyses performed by J.P. Morgan in support of its fairness opinion; (iii) the sales process; and (iv) potential conflicts of interest.

47.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that J.P. Morgan reviewed and

discussed its financial analyses with the Board during various meetings including on December 15, 2022, and further states that the Board considered J.P. Morgan's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

48.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>**COUNT II**</u>

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Maxar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Maxar and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

53.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.       Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the Proxy with the SEC or otherwise disseminating an amendment to the Proxy to Maxar stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B.       Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.       In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.       Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.       Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.       Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: March 22, 2023

**ROWLEY LAW PLLC**

*S/ Shane T. Rowley*

Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*

15